IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT J. BARDO,

            Plaintiff,

vs.

JAMES TILTON, ET AL.,

            Defendants.

No. 2:07-cv-02558-MMM

<u>ORDER GRANTING
MOTION TO DISMISS
CLAIMS AGAINST
DEFENDANTS GARCIA
AND FLOTO</u>

      Robert J. Bardo, a California prisoner incarcerated at Mule Creek State Prison ("MCSP"), brings this <u>pro se</u> civil rights action pursuant to 42 U.S.C. § 1983. Bardo alleges that defendant officials confiscated an advertisement for the People for the Ethical Treatment of Animals ("PETA") showing a side view of a nude actress and failed to investigate his administrative appeal in violation of his First and Fourteenth Amendment rights. [Dkt. 66 at 3-4].

      The court previously dismissed with prejudice Bardo's claims against

Defendants Campbell, Rutherford, and Clendenin. [Dkt. 27, 43]. On June 28, 2010, Bardo's claims against Defendants Floto and Garcia were dismissed without prejudice to Bardo's right to file an amended complaint. [Dkt. 44]. On December 27, 2010, the court granted Bardo leave to amend and directed the clerk to file Bardo's Second Amended Complaint. [Dkt. 65, 66].

On January 10, 2011, defendants Floto and Garcia moved to dismiss Bardo's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. [Dkt. 67]. The court grants the motion to dismiss.

Floto is an appeals examiner at MCSP, and Garcia is the former Chief Deputy Warden at MCSP. [Dkt. 66 at 2-3]. Bardo alleges that, on February 15, 2007, he received a notice that prison authorities had confiscated the PETA advertisement for being obscene. [Dkt. 66 at 3]. The PETA advertisement depicted the side view of actress Dominique Swain standing nude in a classroom with her right breast exposed and writing the slogan, "I'd rather go naked than wear fur," on a blackboard. [Dkt. 66 at 19]. Bardo alleges that Floto and Garcia unlawfully "endorsed" the taking of his PETA advertisement and failed to correct constitutional violations by not investigating his claims or even looking at the advertisement before denying his appeal. [Dkt. 66 at 3-4]. In their motion to

dismiss, Floto and Garcia argue that Bardo's claim should be dismissed because Bardo lacks a "'separate constitutional entitlement to a specific prison grievance procedure.'" [Dkt. 67 at 4]. Alternatively, Floto and Garcia argue that they are protected from liability because they are entitled to qualified immunity. [Dkt. 67 at 5].

## I. Failure to State a Claim

The essence of Bardo's claims against Floto and Garcia is that the appeals process was flawed and that they failed to correct constitutional violations by Officer Clendenin. To the extent that Bardo contends that Floto and Garcia violated his Fourteenth Amendment right to due process by not properly investigating his appeal, he fails to state a claim upon which relief may be granted. Prisoners do not have a separate constitutional right to a specific prison grievance procedure. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). In Ramirez, the Ninth Circuit held that a prisoner asserting that his prison's disciplinary proceedings lacked due process did not have a protected liberty interest in a specific prison grievance procedure. 334 F.3d at 860; see also Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) ("A prison grievance procedure is a procedural right only [and] does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected

liberty interest requiring the procedural protections envisioned by the fourteenth amendment." (internal quotation marks omitted)). Similarly, Bardo's allegations that Floto and Garcia did not investigate his claim and failed to look at the advertisement in question do not amount to a due process violation because he had no entitlement to a specific procedure; nor do such claims rise to the level of a First Amendment violation. Therefore, the alleged failure of Floto and Garcia with respect to Bardo's grievance cannot itself amount to a constitutional violation.

## II.   Qualified Immunity

The court also examines the alternative ground for dismissal put forth by Floto and Garcia. Even assuming that Bardo has stated a theory of constitutional liability upon which relief may be granted, Floto and Garcia are entitled to qualified immunity. "Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." al-Kidd v. Ashcroft, 580 F.3d 949, 964 (9th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."

1   Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotation marks omitted).  The

2   court has "sound discretion" to address these prongs in any sequence it sees fit.

3   Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

4       Assuming Bardo had a due process right in connection with his investigation

5   claim, Floto and Garcia are entitled to qualified immunity because such a right was

6   not clearly established at the time.  Floto and Garcia reasonably believed that their

7   review of his appeal was legally proper.  Under Ninth Circuit law at the time when

8   Floto and Garcia reviewed Bardo's appeal, prisoners did not have a constitutional

9   right to a specific form of procedure for the review of grievances.  See Ramirez,

10  334 F.3d at 860; Mann, 855 F.2d at 640.  Indeed, Bardo has not provided any legal

11  support for such a right.  Thus, any potential due process right that Bardo may have

12  had was not sufficiently clear to apprise Floto and Garcia that their conduct was

13  unlawful.

14      In addition, at the time of Floto and Garcia's decision, Bardo did not have a

15  clearly established First Amendment right to retain the PETA advertisement, a

16  photograph depicting side-view nudity.  Prison officials confiscated the

17  advertisement pursuant to Title 15 of the California Code of Regulations

18  § 3006(c)(17), which bans inmates from possessing "[s]exually explicit images that

19  depict frontal nudity in the form of personal photographs, drawings, magazines, or

1  other pictorial format." The regulation defines "sexually explicit material" as

2  "material that shows the frontal nudity of either gender, including the exposed

3  female breast(s) and/or the genitalia of either gender." Id. § 3006(c)(17)(A). Here,

4  although the alleged advertisement shows Dominique Swain from the side, her

5  breast is exposed. [Dkt. 66 at 19].

6       Floto and Garcia reasonably believed that their actions pursuant to

7  § 3006(c)(17) were permissible under Ninth Circuit law at the time of the decision.

8  Bardo conceded during his appeal that the "lower portion of [a] breast was

9  exposed" in the PETA advertisement. [Dkt. 66 at 11]. In Mauro v. Arpaio, the

10  Ninth Circuit held that a similar ban on depictions of frontal nudity did not violate

11  the First Amendment as it was sufficiently related to legitimate penological

12  interests in security, the reduction in inmate harassment of guards, and inmate

13  rehabilitation. 188 F.3d 1054, 1059, 1063 (9th Cir. 1999) (en banc). Although

14  Mauro did not expressly address the issue of an exposed breast in a side view, it

15  was reasonable for Floto and Garcia to assume that Mauro's rationale applied to

16  the PETA advertisement. Certainly there was no case that established a position to

17  the contrary. Floto and Garcia cannot be exposed to liability for the reasonable

18  performance of their duties. See Pearson, 129 S.Ct. at 815.

19

1  **IT IS ORDERED**

2  Defendants Floto and Garcia's motion to dismiss is granted with prejudice.

3  All claims against all other Defendants were dismissed with prejudice in

4  prior orders. The Clerk of Court is thus directed to enter judgment in favor of all

5  Defendants and close this case.

6

7

8

9  Dated: April 1, 2011

        _M. Margaret McKeown_
10      HON. M. MARGARET McKEOWN
11      UNITED STATES CIRCUIT JUDGE
12      Sitting by Designation
13